RECEIVED
USDC. CLERK. CHARLESTON. S

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA

2009 APR 21  A 11: 37

| | |
|---|---|
| Steven Allen Byrd, aka Steven ) <br> Allan Bryd, ) <br> ) <br> Plaintiff, ) <br> ) <br> -versus- ) <br> ) <br> Federal Bureau of Prisons; ) <br> Warden Mildred L. Rivera; ) <br> Clinical Director Dr. Zoltan ) <br> Vendel; Camp Administrator ) <br> Anita Jones, ) <br> ) <br> Defendants. ) | C. A. No. 2:08-3540-TLW-RSC <br><br> **REPORT AND RECOMMENDATION** |

This <u>Bivens</u>[1] civil rights action brought by a federal

prisoner proceeding <u>pro</u> <u>se</u> and <u>in</u> <u>forma</u> <u>pauperis</u> is before the

undersigned United States Magistrate Judge for a report and

recommendation on the defendants' motion for summary judgment

filed February 5, 2009.  28 U.S.C. § 636 (b).

The plaintiff, Steven Allen Byrd, filed suit on October 21,

2008, and named as defendants the Federal Bureau of Prisons,

Federal Correctional Facility (FCI) Estill Warden Mildred L.

Rivera, Dr. Zoltan R. Vendel, Clinical Director at Estill, and

Anita Jones, Satellite Camp Administrator at Estill.  All

---

[1] Section 1983 is not applicable in suits filed against any
federal officials.  However such relief is available: "Federal
courts have power under 28 U.S.C. § 1331 (1994) to award damages
occasioned by infringements by federal officials of
constitutionally protected interests."  <u>Bivens v. Six Unknown</u>
<u>Named Agents of Federal Bureau of Narcotics</u>, 403 U.S. 388 (1971).

1

defendants are sued in their official and individual capacities.
Byrd seeks a court order that the defendants provide him adequate
medical care for his left thigh injury from a fall as well as
damages.

The defendants were served in December 2008 and filed a
motion to dismiss or in the alternative for summary judgment on
February 5, 2009, along with their affidavits and exhibits.  On
February 5, 2009, the plaintiff was provided a copy of the
defendants' motion, affidavits, and exhibits.  He was also given
an explanation of dismissal and summary judgment procedure as
well as pertinent extracts from Rules 12 and 56 of the Federal
Rules of Civil Procedure similar to that required by <u>Roseboro v.
Garrison</u>, 528 F.2d 309 (4th Cir. 1975).  On March 13, 2009,
Plaintiff filed his opposition to the defendants' motion with his
own affidavit and various exhibits.  Hence it appears
consideration of the motion is appropriate.

**SUMMARY JUDGMENT STANDARD**

Summary judgment should be granted when the record
demonstrates that the requirements of Rule 56(c) have been met.
<u>Celotex Corp. v. Catrett</u>, 477 U.S. 317 (1986).  Summary judgment
is mandated where the party opposing the motion has failed to
establish the existence of an element essential to his case, and
on which he bears the burden of proof.  <u>Id.</u>, 477 U.S. at 322.
The party seeking summary judgment must inform the court of the

2

basis for its motion, and identify those portions of the record that demonstrate the absence of a genuine issue of material fact. The moving party, however, need not offer proof that negates the opponent's claim; rather, as to issues on which the party opposing the motion has the burden of proof at trial, the party seeking summary judgment need only point to an absence of evidence to support the opponent's claim.  The party opposing summary judgment must then point to facts evidencing a genuine issue for trial.  Fed. R. Civ. P. 56(c); see also, Anderson v. Liberty Lobby. Inc., 477 U.S. 242, 252 (1986).

Summary judgment should not be denied merely because the plaintiff raises a "metaphysical doubt" as to the material facts. Mathushita Electrical Industrial Co., Ltd v. Zenith Radio Corp., 475 U.S. 574, 586 (1986).  Likewise, "unsupported speculation is not sufficient to defeat a summary judgment motion." Felty v. Graves-Humphreys Co., 818 F.2d 1126, 1128 (4th Cir. 1987).  If the plaintiff's evidence does not raise a genuine issue as to a material fact, then summary judgment is proper for the defendants.  See, Anderson, 477 U.S. at 249-50 (where evidence is not significantly probative, then summary judgment is proper). Furthermore, even as to a material fact, an issue is genuine only where the record establishes that the fact-finder could find, by a preponderance of the evidence, that the plaintiff is entitled to judgment in his favor.  Id., 477 U.S. at 252.

3

**FACTS**

The facts for purposes of the defendants' motion, either undisputed or taken in the light most favorable to the plaintiff as the non-moving party, and all reasonable inferences therefrom, to the extent supported by the record are as follow.

On October 31, 2007, Byrd's foot became caught in a railroad cross tie step which led down into Inmate Park at the satellite camp of Estill FCI which caused him to fall down the steps. Inmate Larry Bush saw the fall and helped Byrd to his feet and helped him walk back to his housing unit where Byrd asked his case manager Vicki Roberts to get him medical attention. There was visible bruising and bleeding and Byrd was in a great deal of pain. Byrd was unable to stand or walk on his own. Roberts used her radio to notify the medical department that an inmate at the Camp needed medical attention. However, since it was after 4 p.m., only one medical officer was on duty at the prison and Roberts does not remember a medical officer responding to her radio message that day.

The next day Byrd reported the fall and his injuries to Camp Officer Penny Tucker and she entered the information in the log book[2] including the injuries she observed. Byrd was at that time in "severe pain and could barely walk without physical

---

[2] The actual entry has not been made a part of the record here.

4

assistance." Byrd did not receive medical attention until he was examined by Defendant Dr. Vendel on November 29, 2007, despite making,

> repeated and long-standing requests for basic and humane medical care and assistance for [his] injuries and pain all of the following, but not limited to, and all are acceptable forms for inmate grievances within the Inmate Handbook; 1)several written sick call requests to Medical not just the one as Defendants have alleged, 2) numerous and longstanding oral requests to Camp Administrator Ms. Jones, Warden Mildred L. Rivera, {his} case manager Ms. Roberts, my Case Counselor Mr. Ford, Camp Officer Ms. Tucker, Case Counselor Mr. Gantt, case Manager Ms. Horvath, Health Services Administrator Ms. Bradley, and others, during main-line and open house, again, all are acceptable forms fo Inmate Grievance Resolution, 3) [Byrd] filed Informal Inmate Grievance and Formal Inmate Grievances as well, 4) [Byrd] visited the Camp Medical Health Services Office numerous times during Sick-Call and I was repeatedly denied examination and treatment until November 29, 2007.

Byrd's sworn declaration filed in opposition to the defendant's motion, pgs 3, 4.

When Byrd was examined by defendant Dr. Vendel on November 29, 2007, Dr. Vendel advised him to continue with his analgesics which had been prescribed to him in a previous chronic care clinic, and put him on medical convalescence for a month which restricted him from work and sports. (Def. Ex. 3, pgs. 6, 7 and Ex. 4). Dr. Vendel diagnosed tendinitis myositis of the left thigh. Byrd was also informed that magnetic resonance imaging (MRI) study of his left thigh would be considered if his

5

condition did not improve, and was instructed to follow up in a month with his assigned medical provider if he did not improve. Id.

Byrd's medical records submitted by the defendants have no documentation in the intervening month showing Byrd followed up with his assigned medical provider with complaints about his left thigh. (Def. Ex. 3).

The next time Byrd was seen by Dr. Vendel was January 3, 2008, when he was seen because of complaints of continued lower back pain. The medical record of this date reflects that Byrd complained of pain radiating from his lumbar spine to his right leg, but not his left. (Def. Ex. 3, pg. 8). Dr. Vendel diagnosed chronic low back pain, recommended a MRI of the lumber sacral spine, and noted that xray reports were pending. Id. All requests for MRIs, as well as any other diagnostic testing which must be done outside the prison, required approval by Dr. Betzy Hernandez-Ricoff, the Regional Clinical Director for the Southeast Region of the BOP. (Def. Ex. 5 pg. 1 Dec. of Hernandez-Ricoff).

On January 23, 2009, Byrd was seen by Dr. Vendel in the chronic care clinic for chronic low back pain radiating to his right leg. Vendel diagnosed chronic low back pain due to degenerative disc disease and prescribed Ibuprophen, Elavil and Zocor. Vendel again put Byrd on convalescence for one month and

indicated that he would order a MRI at the next chronic care clinic. He also received updated x-rays of his left knee, his chest and his lumbar spine. (Def. Ex. 3, pg. 24, 25, 26). The x-ray was negative to his left knee and his chest. The x-ray of his lumbar spine was negative except for "minimal degenerative disc disease." Id.

On April 10, 2008, Byrd reported to medical with a complaint that he had a bruise on his left leg and he continued to have low back pain. (Def. Ex. 3, pg. 12 and Ex. 4). An examination revealed Byrd was not limping and had no bruise noted on his left leg. Id. Byrd reported a dull radiating pain to his left leg. He was assessed with low back pain and continued on his medications for his low back pain. Id. The medical entry of that date indicated the MRI consultation was still pending at that time. Id.

On June 5, 2008, Byrd was seen by Dr. Betzy Hernandez-Ricoff, the Regional Clinical Director, who was at the satellite camp on that day evaluating inmates who had medical complaints. (Def. Ex. 3, pgs. 13-15 and Ex. 5, Dec. of Dr. Betzy Hernandez-Ricoff). Byrd told Dr. Hernandez-Ricoff that he fell on October 31, 2007, and was seen by medical on November 29, 2007. Id. He complained of numbness in his left foot and pain. Id. He stated the pain increased when he walked or stood for more than thirty minutes. Id. On examination it was noted that

Byrd was not limping, and his heal and toe walk was within normal limits. Byrd had no paraspinal spasm or scoliosis and a normal range of flexion and extension. Examination of his legs showed muscle tone, no arthropathy, and normal capillary refill in his toes. Byrd was assessed as essentially healthy male without a peripheral lower extremity identified problem. He had good circulation and sensory responses. Id. Dr. Hernandez-Ricoff discussed with Byrd her findings as well as the importance of exercising. Id. During this evaluation, Dr. Hernandez-Ricoff, who must approve all MRIs as the Regional Clinical Director, denied the MRI consultation for Byrd previously submitted by Dr. Vendel on January 3, 2008.[3] Id. Dr. Hernandez-Ricoff's findings revealed there was no medical reason why Byrd needed an MRI at that time. Id.

On July 10, 2008, Byrd was seen in the chronic care clinic by the staff physician for an examination. (Def. Ex. 3, pgs. 16-17 and Ex.4). Byrd did not complain of pain in his left leg. Id. He was continued on his medication for his low back pain and the importance of exercising was discussed with him. Id. He was

---

[3] Byrd is convinced that his MRI was denied on January 3, 2008, because his medical records from that date contain a notation to see Dr. Hernandez's note, "no need for MRI." Nonetheless that notation is not dated and there is nothing but speculation on Byrd's part that the note was not added after Dr. Hernandez personally examined the plaintiff and formed her medical opinion that no MRI was needed.

told he would be seen in 6 months for another chronic care
appointment.  Id.

In October 2008 Byrd filed the instant action.

## LAW RELATED TO MEDICAL CARE AFFORDED PRISONERS

The Eighth Amendment prohibits the infliction of cruel and
unusual punishment on one who has committed a crime.  See, U.S.
Const. Amend. VIII.  To state a claim under the Eighth Amendment
for ineffective medical assistance, the plaintiff must show that
the defendant acted with deliberate indifference to his serious
medical needs.  Estelle v. Gamble, 429 U.S. 97, 104 (1976).  To
succeed on an Eighth Amendment "cruel and unusual punishment"
claim, a prisoner must prove two elements:  (1) that objectively
the deprivation of a basic human need was "sufficiently serious,"
and (2) that subjectively the prison official acted with a
"sufficiently culpable state of mind."  Wilson v. Seiter, 501
U.S. 294, 298 (1991).

A serious medical condition is one that has been diagnosed
by a physician as mandating treatment or that is so obvious that
even a lay person would recognize the need for a doctor's
attention.  Gaudreault v. Municipality of Salem, Mass., 923 F.2d
203, 208 (1st Cir. 1990), cert. denied, 500 U.S. 956 (1991). A
medical condition is also serious if a delay in treatment causes
a lifelong handicap or permanent loss.  Monmouth County Corr.

Inst. Inmates v. Lanzaro, 834 F.2d 326, 347 (3rd Cir. 1987),
cert. denied, 486 U.S. 1006 (1988).

The subjective component of a cruel and unusual punishment
claim is satisfied by showing that the prison official acted with
deliberate indifference. Wilson, 501 U.S. at 303. A finding of
deliberate indifference requires more than a showing of
negligence. Farmer v. Brennan, 511 U.S. 825, 835 (1994). A
prison official "must both be aware of facts from which the
inference could be drawn that a substantial risk of serious harm
exists, and he must also draw the inference." Id. at 837. A
prison official is not liable if he "knew the underlying facts
but believed (albeit unsoundly) that the risk to which the fact
gave rise was insubstantial of nonexistent." Id. at 844.

"To establish that a health care provider's actions
constitute deliberate indifference to a serious medical need, the
treatment, [or lack thereof], must be so grossly incompetent,
inadequate, or excessive as to shock the conscience or to be
intolerable to fundamental fairness." Miltier v. Beorn, 896 F.2d
848, 851 (4th Cir. 1990). These requirements go beyond even a
showing of negligence, and requires Plaintiff to establish the
defendants acted with an indifference as would "offend evolving
standards of decency." A mere disagreement between the inmate
and the prison's medical staff as to the inmate's diagnosis or
course of treatment does not support a claim of cruel and unusual

10

punishment unless exceptional circumstances exist.  Wright v. Collins, 766 F.2d 841, 849 (4th Cir. 1985).

A constitutional violation is established when "government officials show deliberate indifference to those medical needs which have been diagnosed as mandating treatment, conditions which obviously require medical attention, conditions which significantly affect an individual's daily life activities, or conditions which cause pain, discomfort or a threat to good health."  See, Morales Feliciano v. Calderon Serra, 300 F.Supp.2d 321, 341 (D.P.R. 2004) (citing Brock v. Wright, 315 F.3d 158, 162 (2d Cir. 2003)).

In a civil rights claim, whether a medical provider has been deliberately indifferent to a prisoner's serious medical need is a two part inquiry.  First, the prisoner must show that he was deprived of an objectively serious human need.  Johnson v. Quinones, 145 F.3d 164 (4th Cir. 1998).  Second, the prisoner must demonstrate that the prison official acted with a "sufficiently culpable state of mind."  Wilson v. Seiter, 501 U.S. 294, 298, 111 S.Ct. 2321 (1991).

Farmer v. Brennan, 511 U.S. 825 (1994) and cases interpreting Farmer, make clear that general knowledge of facts creating a substantial risk of harm is not enough.  The prison official must also draw the inference between those general facts and the specific serious risk of harm confronting the inmate.

11

See, Farmer, 511 U.S. at 837, 114 S.Ct. at 1978-79 (stating that
"the official must both be aware that a substantial risk of
serious harm exists, and he must also draw the inference").

Basically, a prison official "must both be aware of facts
from which the inference could be drawn that a substantial risk
of serious harm exists, and he must also draw the inference."
Farmer, 511 U.S. at 837, 114 S.Ct. at 1979.  Prison officials
must know of and disregard an objectively serious condition,
medical need, or risk of harm.  A prison official is not liable
if he "knew the underlying facts but believed (albeit unsoundly)
that the risk to which the facts gave rise was insubstantial or
nonexistent."  Farmer, 511 U.S. at 844, 114 S.Ct. at 1982; see,
Rich v. Bruce, 129 F.3d 336, 338 (4th Cir. 1997) (holding that
prison official was not deliberately indifferent because he did
not actually draw the inference that the prisoner was exposed to
a specific risk of harm).

In Estelle v. Gamble, the prisoner contended that other
examinations should have been conducted by the prison's medical
staff and that X-rays should have been taken.  The Supreme Court
pointed out that not "every claim by a prisoner that he has not
received adequate medical treatment states a violation."  Id. at
105.  "Although the Constitution does require that prisoners be
provided with a certain minimum level of medical treatment, it
does not guarantee to a prisoner the treatment of his choice."

12

Jackson v. Fair, 846 F.2d 811, 817 (1st Cir. 1988); Cf. Whitley
v. Albers, 475 U.S. 312, 320 (1986)(a state's responsibility to
attend to the medical needs of prisoners does not ordinarily
clash with other equally important governmental
responsibilities).

     Likewise, constitutionally, prisons are not required to
furnish prisoners the best of care, only reasonable care.
Vinnedge v. Gibbs, 550 F.2d 926 (4th Cir. 1977).  The mere
failure to treat all medical problems to a prisoner's
satisfaction, even if actual medical malpractice is involved, is
insufficient to support a claim.  Sosabee v. Murphy, 797 F.2d 179
(4th Cir. 1986).  Even if plaintiff could establish negligence in
his medical treatment, his cause of action would be in negligence
against the defendants.  Bivens does not provide for a remedy for
violation of state law, but only for violations which rise to the
level of unconstitutional deprivation.  "Medical malpractice does
not become a constitutional violation merely because the victim
is a prisoner."  Estelle, supra.

### RESPONDEAT SUPERIOR

     It is settled that the doctrines of vicarious liability and
respondeat superior do not apply in civil rights actions.
Vinnedge v. Gibbs, 550 F.2d 926 (4th Cir. 1977).  A defendant
cannot be held liable for the acts of others without specific
wrongdoing by that defendant which caused harm to the prisoner.

<u>Monell v. Department of Social Services</u>, 436 U.S. 658, 694
(1978).

## DISCUSSION

A review of the record and relevant case law reveals that
the defendants' motion for summary judgment should be granted as
to all Defendants.

As an initial matter, the district court lacks subject
matter jurisdiction over Byrd's claims against the Bureau of
Prisons because <u>Bivens</u> does not extend to federal agencies.
<u>Bivens v. Six Unknown Named Agents of Fed. Bureau of Narcotics,
403 U.S. 388, 91 S.Ct. 1999, 29 L.Ed.2d 619 (1971)</u>, see also,
<u>F.D.I.C v. Meyer</u>, 114 S.Ct. 996, 1005-06 (1994) (holding that a
<u>Bivens</u> action is unavailable against agencies).  Accordingly, it
is recommended that the Bureau of Prisons be dismissed from the
action for want of jurisdiction.

Likewise <u>Bivens</u> does not extend to individual defendants
sued in their official capacities and therefore Rivera, Vendel,
and Jones in their official capacities should also be dismissed
from the action for want of jurisdiction.  See, <u>F.D.I.C. v.
Meyer</u>, 510 U.S. 471, 484-86, 114 S.Ct. 996, (1994); <u>Randall v.
United States</u>, 95 F.3d 339, 345 (4th Cir. 1996) ("Any remedy
under <u>Bivens</u> is against federal officials individually, not the
federal government.").

14

Next, to the extent Byrd seeks to impose liability on Dr.
Vendel in his personal capacity because he holds the position of
Medical Clinical Director over those unnamed medical personnel
who did not respond to Byrd's requests for help, the action
should be dismissed because vicarious liability theories are
inapplicable in civil rights actions.  Trulock v. Freeh, 275 F.3d
391 (4th Cir. 2001); Estate of Rosenberg v. Crandell, 56 F.3d 35,
37 (8th Cir. 1995).

Further, to the extent that Byrd is alleging that Dr.
Vendel's liability is personal, based upon his own constitutional
violations, Plaintiff has not carried his burden to show either
the objective or subjective elements of an Eight Amendment
medical claim.  Here, the only evidence is that this defendant
first knew Byrd was seeking medical attention on November 29,
2007, when Byrd reported to Medical complaining that he injured
his left thigh about a month before.  Vendel affied that he was
not the duty medical provider on October 31, 2007, and that he
was never made aware of Byrd's prior request for medical
attention.  Dr. Vendel examined Byrd personally on November 29th
and diagnosed him with tendinitis myosotis of his left thigh and
advised him to continue with his analgesics which had been
prescribed to him in a previous chronic care clinic.  Vendel gave
Byrd a medical convalescence for a month and a "no sport"
restriction for a month.  Vendel also advised Byrd that a MRI

15

study of his left thigh would be considered if he did not notice
any improvements in 30 days.  He told Byrd to follow up in a
month with his assigned medical provider if he did not improve.

Thereafter Vendel provided Byrd with a plethora of medical
care including more examinations, x-rays, prescriptions,
convalescence passes, and encouragement to engage in exercise
activities.  On January 3, 2008, Vendel examined Byrd for his
chronic care appointment and diagnosed him with chronic low back
pain, secondary to Degenerative Disc Disease and Hyperlipdemia.
He prescribed Byrd anti-inflammatory and pain medication and gave
him another one month medical convalescence.  Vendel also
submitted a consultation request for an MRI of the lumbar spine
because Byrd continued to have chronic low back pain for over a
year with pain radiating toward the right[4] extremity.  The
recommendation was rejected by Dr. Betty Hernandez, the Regional
Clinical Director, who, following her own examination and
evaluation[5] of Byrd, declined to approve the MRI, concluding

---

[4] Byrd did not complain of pain in his left thigh, the site
of the injury from the fall, during this examination.

[5] An examination of Byrd by Dr. Hernandez revealed he was
not limping, and his heal and toe walk was within normal limits.
He also had no paraspinal spasm or scoliosis and had a normal
range of flexion and extension. Examination of his legs showed
muscle tone, no arthropathy, and normal capillary refill in his
toes. He was assessed as essentially healthy male without a
peripheral lower extremity identified problem and with good
circulation and sensory responses, Dr. Hernandez discussed her
findings as well the importance of exercising with Byrd.

16

there was no medical reason for a MRI which had to be done outside the prison.

On July 10, 2008, Byrd was seen in chronic care clinic by the staff physician for an examination during which he did not complain of pain in his left leg. He was continued on his medication for his low back pain and the importance of exercising was again discussed with him. He was told he would be seen in 6 months for another chronic care appointment.

Vendel also affied that he never intentionally or unintentionally violated Byrd's constitutional rights, and that he was never deliberately indifferent to any serious medical needs of Byrd's. Next, Byrd sued Vendel.

Byrd has not established even non-actionable malpractice by Vendel, much less treatment so grossly incompetent, inadequate, or excessive as to shock the conscience or to be intolerable to fundamental fairness. Miltier v. Beorn, 896 F.2d 848, 851 (4th Cir. 1990). Byrd simply failed to establish the defendant acted with an indifference as would "offend evolving standards of decency." Again, a mere disagreement between the inmate and the prison's medical staff as to the inmate's diagnosis or course of treatment does not support a claim of cruel and unusual punishment unless exceptional circumstances exist. Wright v. Collins, 766 F.2d 841, 849 (4th Cir. 1985). No exceptional

17

circumstances exist here.  Vendel is entitled to judgment as a
matter of law.

Likewise, taking all facts according to the plaintiff as the
non-moving party and drawing all reasonable inferences in the
plaintiff's favor as required on summary judgment, it appears
that Warden Rivera and Camp Administrator Anita Jones should be
granted summary judgment.  Here, Byrd affied that in November
2007 and thereafter he made "repeated and long-standing requests
for basic and humane medical care and assistance for [his]
injuries and pain ...." to Rivera personally and to Jones
personally but that while they told him that they "would look
into it" and "get him medical assistance", they did not.
Importantly, Byrd affied that the requests took place at an
unspecified time in November 2007 and thereafter.  (Pl. Aff. in
opposition to the defendant's motion).  As just discussed, Byrd
received constitutionally adequate medical care in November 2007
and thereafter.  If Byrd could establish that these defendants
knew of a serious medical need which, if untreated, would cause
further injury, and knew that he was not receiving medical
attention or if they were actively interfering with treatment,
they would not be entitled to summary judgment.  However, the
defendants affied that they were never told Byrd was being
refused medical treatment prior to November 29, 2007, when he was
examined by Dr. Vendel, and Byrd has not established that they

18

knew of any lack of treatment.  Non-medical personnel like Rivera and Jones are generally entitled to rely on the diagnosis and treatment rendered by trained medical staff and there is no evidence in this record to overcome that entitlement.  <u>Miltier v. Beorn</u>, 896 F.2d 848 (4th Cir. 1990).

Further, there is no evidence to support a finding that the Warden and the Camp Administrator tacitly authorized their subordinate health care providers to employ constitutionally incompetent medical procedures.  <u>See</u>, <u>Davidson v. Cannon</u>, 474 U.S. 344, 348, 106 S.Ct. 668, 670 (1985) (failure of prison officials to respond to inmate's note alleging threat by fellow inmate did not constitute abusive or oppressive employment of governmental power such as to render supervisory personnel liable under the constitution for inmate's beating).

Lastly, if Byrd is alleging that these defendants are liable to him because of their positions at the prison, respondeat superior liability cannot not attach in a <u>Bivens</u> suit.  <u>Monell v. Department of Social Services</u>, 436 U.S. 658, 694 (1978).

### **CONCLUSION**

Accordingly, it is recommended that summary judgment should be granted to all defendants and this matter ended.  It is also

recommended that any other outstanding motions should be denied as moot.

Respectfully Submitted,

Robert S. Carr
United States Magistrate Judge

Charleston, South Carolina

April 21, 2009

**Notice of Right to File Objections to Report and Recommendation**

The parties are advised that they may file specific written objections to this Report and Recommendation with the District Court Judge. Objections must specifically identify the portions of the Report and Recommendation to which objections are made and the basis for such objections. In the absence of a timely filed objection, a district court judge need not conduct a de novo review, but instead must "only satisfy itself that there is no clear error on the face of the record in order to accept the recommendation." Diamond v. Colonial Life & Acc. Ins. Co., 416 F.3d 310 (4th Cir. 2005).

Specific written objections must be filed within ten (10) days of the date of service of this Report and Recommendation. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b). The time calculation of this ten-day period excludes weekends and holidays and provides for an additional three (3) days for filing by mail. Fed. R. Civ. P. 6(a) & (e). Filing by mail pursuant to Fed. R. Civ. P. 5 may be accomplished by mailing objections to:

Larry W. Propes, Clerk
United States District Court
P.O. Box 835
Charleston, South Carolina 29402

**Failure to timely file specific written objections to this Report and Recommendation will result in waiver of the right to appeal from a judgment of the District Court based upon such Recommendation.** 28 U.S.C. § 636(b)(1); Thomas v. Arn, 474 U.S. 140 (1985); United States v. Schronce, 727 F.2d 91 (4th Cir. 1984); Wright v. Collins, 766 F.2d 841 (4th Cir. 1985).